35610. HAYES *et al.* v. HAY, administrator.

DECIDED MAY 24, 1955.

*Steve M. Watkins*, for plaintiffs in error.

*A. J. Whitehurst, C. E. Hay*, contra.

QUILLIAN, J. ■ The application for a year's support filed by Annie Lee Hayes, and the caveat filed by J. O. Hayes and Dorothy Hayes Graham, made two issues: first, whether the appraisers set aside to the applicant more in property and money than she was justly and legally entitled to; second, whether the applicant was the widow of Isaac Hayes from whose estate she sought to have the year's support set aside.

The caveators, J. O. Hayes and Dorothy Hayes Graham (plaintiffs in error here), contend that the evidence was not sufficient to sustain the verdict because it demanded a finding by the jury that the return of the appraisers was excessive, and that the applicant, Annie Lee Hayes, was not the widow of Isaac Hayes.

The burden of proof was upon the caveators who objected to the return of the appraisers on the ground that it was excessive. *Mays* v. *Mays*, 25 *Ga. App.* 515 (3) (103 S. E. 805); *Smith* v. *Smith*, 115 *Ga.* 692 (2) (42 S. E. 72).

In determining the amount of a year's support to be set aside

to a widow or a widow and minor child or children, Code (Ann. Supp.) § 113-1002 provides that the year's support set aside to the widow, minor child or children is to be estimated according to the circumstances and standing of the family previous to the death of the testator or intestate, and keeping in view also the solvency of the estate.

The evidence in the instant case shows the value of the estate and the amount set aside to the widow by the appraisers, and discloses that the amount set aside comprised the major part of the deceased's estate. But the evidence is entirely silent as to the standing of the family or the manner in which the deceased and the applicant had lived prior to his death. It follows that the caveators did not produce one of the necessary elements of evidence to show that the amount set aside to the applicant was more than she was entitled to as a year's support. In this connection see *Young* v. *Anderson*, 19 *Ga. App.* 551 (2) (91 S. E. 900); *Carter* v. *Davidson*, 138 *Ga.* 317 (3) (75 S. E. 155).

■ The caveat as amended set up simply that the applicant was not the widow of Isaac Hayes, and elaborating on that ground in their amendment, the caveators averred that she was not the widow of Isaac Hayes for the reasons, as stated in the amendment: "4. Annie Lee Hayes is the lawful wife of G. W. Sneed, also known as Jack Sneed, to whom she was married on June 28, 1931, in Thomas County, Georgia, from whom she has never been divorced and the said Jack Sneed is now in life. 5. Isaac Hayes, now deceased, was undivorced from a previous common-law wife, Sara Anderson Hayes, at the time of his ceremonial marriage to Annie Lee Sneed on June 6, 1936, and said common-law marriage has not been dissolved up to the present time."

We first consider the issue as to whether the applicant's previous marriage was an impediment to her marriage to the deceased.

It is elementary law that a female child 12 years of age cannot contract marriage. The marriage of a person under the legal age is void, and if the parties to such a union do not live together after the child reaches the age of 14, there is not and has never been a marriage between them. Code § 53-102; *Mims* v. *Hardware Mutual Casualty Co.*, 82 *Ga. App.* 210 (1) (60 S. E. 2d 501).

The applicant admitted that she had entered into a ceremonial

marriage with Jack Sneed in 1931 and never obtained a divorce from him. However, she positively testified that she separated from Sneed the same year while she was only twelve years old and thereafter did not cohabit with him or permit him any marital right. Sneed and several witnesses denied the testimony of the applicant and swore that she lived with Sneed after she was fourteen years old. The applicant's testimony, while disputed, was sufficient evidence to carry the issue to the jury.

Sara Kelley testified that in 1920 she celebrated a ceremonial marriage with Isaac Hayes, authorized by a marriage license and performed by a minister, lived with him for a short time, separated from him for several years, resumed living with him in 1932, and continued to live with him thereafter for two years. She admitted that at the time she married Isaac Hayes she had a living husband, but testified that in 1929 he died and was not in life when she returned to live with Hayes. At this point her testimony is somewhat confused by an answer that she made to a question: "Yes, when I moved in with Isaac, my first husband was living." It did not definitely appear whether she alluded to the time at which she lived with Hayes immediately after her purported ceremonial marriage to him or to the time when she returned in 1932. She did not testify that he held her out publicly as his wife during the latter period that they lived together, nor did she directly swear to any agreement between her and him to resume the marital status when she returned to his bed and board.

We now discuss the effect that the alleged common-law marriage had on the status of the applicant as the deceased widow.

The caveators, by alleging that the marriage between Isaac Hayes and the applicant was a ceremonial marriage, assumed the burden of showing its invalidity by clear and convincing evidence. "The presumption of its validity was overcome as a matter of law when the evidence showed without dispute that Harry Newton was laboring under the disability of a previous undissolved marriage at the time of the ceremonial marriage with the plaintiff in error." *Cooper v. Cooper*, 88 *Ga. App.* 335, 338 (76 S. E. 2d 726).

They undertook to carry this burden by proving that Sara Kelley, nee Sara Anderson, was the lawful common-law wife of

Hayes at the time his ceremonial marriage to the applicant was solemnized. The only evidence introduced by them in reference to this issue was the testimony of Sara Kelley. Her testimony, if believed by the jury, would have been sufficient to have established the fact of a ceremonial marriage between her and Hayes. She testified that for two years, beginning in 1932, after the death of her lawful husband she lived with Hayes as his wife. All that is required under our law to establish the factum of a common-law marriage is that parties able to contract marriage enter into an agreement per verba de praesenti and consummate that agreement by cohabitation. *Chance* v. *Chance*, 60 *Ga. App.* 889 (5 S. E. 2d 399).

But it was for the jury to decide what credit would be given to the testimony of Sara Kelly. It is the law that the jury can not arbitrarily reject the positive testimony of an impartial and unimpeached witness. *Lankford* v. *Holton*, 187 *Ga.* 94 (9) (200 S. E. 43). However, if the evidence given by a witness is inherently improbable, or if the witness is discredited in some legal manner, or if the witness is impeached, the jury may disbelieve him altogether. *Whiddon* v. *Hall*, 155 *Ga.* 570 (6) (118 S. E. 347). The jury may also take into consideration the interest of the witness in the result of the case, where it appears from the evidence that the witness entertains animosity to one of the litigants, though for that reason alone a witness's testimony is not to be disregarded. *Walker* v. *City of Rome*, 6 *Ga. App.* 59 (1) (64 S. E. 310).

In this case the evidence discredited the witness, in that it showed that in 1920 she contracted a bigamous marriage with Hayes. It is not necessary to the validity of a common-law marriage that it be publicized, and the mere fact that it is kept secret does not authorize the jury to find that it did not exist. *Lefkoff* v. *Sicro*, 189 *Ga.* 554, 566 (6 S. E. 2d 687, 133 A. L. R. 738). Yet the fact that Sara Kelley did not testify that Hayes held her out as his wife after the common-law marriage, and the fact that no relative, friend, or neighbor who knew of her common-law marriage was produced as a witness, were facts from which the jury could legitimately infer that her testimony that she lived with him as his wife was improbable.

One of the methods of impeaching a witness is by disproving

the facts testified to by him. There was evidence tending to disprove the testimony of Sara Kelley that a ceremonial marriage was solemnized between her and Hayes in Thomas County. She testified that she married Hayes in the county in 1920; that there was a marriage license, and that a preacher performed the ceremony. The ordinary of the county, sworn as a witness, testified that there was no record of the marriage in his office. She testified that the applicant was the cause of the separation between her and the deceased, and that she saw the applicant in his house. While the witness did not specifically state that the applicant was not then married to Hayes, taken in connection with her testimony that the applicant was the cause of her separation from him, the jury was warranted in assuming that she intended to fix the time of that occurrence prior to the applicant's marriage to Hayes. The applicant denied that she was ever in his house before she married him. It was a question for the jury as to which of them they believed, the witness or the applicant. Moreover, Sara Kelley's testimony was not so clear and convincing that we can hold that it constituted conclusive proof of her common-law marriage to the deceased, for the reason·that, while she testified that her lawful husband was dead in 1929 and later, in 1932, her common-law marriage to Hayes occurred, at one point in her testimony she swore that, when she moved in with Hayes, her lawful husband was in life. Again it was not entirely clear as to whether she referred to her cohabitation with the deceased after her purported ceremonial marriage to him or after she claimed they contracted the common-law marriage. But, to say the least of it, the jury was authorized to conclude that her testimony lacked the qualities of clarity and definiteness that the courts have held in the cases of *Cooper* v. *Cooper*, supra, and *Brown* v. *State,* 208 *Ga.* 304 (66 S. E. 2d 745), are necessary to overcome the presumption of validity shielding the ceremonial marriage between the applicant Annie Lee Hayes and the deceased. So we are constrained to hold that it was a question for the jury as to whether the applicant was the lawful widow of the deceased. The jury resolved that issue in favor of the applicant, and we cannot disturb the jury's verdict on the ground that it was not supported by the evidence.

■ There are two special grounds of the motion for new trial.

The first complains that the court admitted hearsay evidence, but the evidence referred to is not set out literally or in substance in the ground. It is elementary that the ground is so incomplete that this court cannot pass upon its merit.

The second special ground complains that the court did not instruct the jury with reasonable clearness that the trial was a de novo hearing of the case, so as to inform them that they "could change or modify the award made by the appraisers made to the ordinary in the matter." The ground recites that the court charged the jury: "Gentlemen, if you find in favor of the caveators, then the form of your verdict would be 'We, the jury, find in favor of the caveators.' If you find in favor of Annie Lee Hayes, the form of your verdict would be 'We, the jury, find in favor of the petitioner.' Gentlemen, you may retire and make up your verdict." This charge is not expected to, but the ground merely relates that the jury was so instructed.

While the ground is not complete, in that it does not show what the court should have charged the jury, and does not show that there were pleadings and evidence authorizing the charge desired by the movants, since the question has already been dealt with in part in another division of this opinion, perhaps it is well to decide the point sought to be raised.

Where authorized by the pleadings and evidence, the court should charge that the jury may find that the applicant is entitled to more or less than the appraisers designated as a reasonable year's support for her. *Calhoun National Bank* v. *Slagle*, 53 *Ga. App.* 553, 556 (186 S. E. 445). In the instant case we cannot hold that the court erred in so instructing the jury, for the reason, as pointed out in the first division of this opinion, it was not shown what the circumstances and standing of the applicant and the deceased were before his death, that is, their manner of living. Consequently, the jury did not have before it data from which it could intelligently determine whether the amount set aside as a year's support should be increased or diminished.

*Judgment affirmed. Felton, C. J., and Nichols, J., concur.*