### A06A1465. CHALKER v. THE STATE.
(635 SE2d 890)

PHIPPS, Judge.

Clifton Doc Chalker was tried by a jury and convicted of three counts of child molestation and one count each of attempted aggravated child molestation and cruelty to children for acts committed against his stepdaughter, E. L. He was sentenced to serve a total of 40 years, 20 in confinement and the remainder on probation. His only claim on appeal is that the evidence was insufficient to support his convictions. Finding the evidence sufficient, we affirm.

The state presented evidence that in March 2003, E. L. was 11 years old. She lived with her father the majority of the time, but visited her mother frequently. Those visits continued after E. L.'s mother married Chalker. The weekend of March 8 and 9, E. L. stayed at her mother's apartment. On Saturday night, E. L. was sitting in the living room with her mother and Chalker, and they were watching movies. After one movie ended, E. L.'s mother put E. L.'s baby sister to bed and did not return. E. L. and Chalker discovered that E. L.'s mother had fallen asleep, and they tried unsuccessfully to wake her. E. L. and Chalker then returned to the living room, and Chalker began rubbing E. L.'s body. He reached under her clothes and touched her breast and her vagina. Chalker made E. L. put her hand on his penis while they were in the living room and again in the bathroom. He told her to "grab it like a microphone and go up and down on it" and that it felt good to him. While they were in the bathroom, he also told

---

[8] *Boone v. State,* 250 Ga. App. 133, 140 (12) (549 SE2d 713) (2001).

her to put her mouth on his penis but she refused. He told her several times during the night not to tell anyone and made her promise that she would not. He told her that if she did tell anyone, he would "kick her ass."

The next morning, E. L. did not tell her mother what had happened because she knew that her mother would tell Chalker whatever she said and she wanted to tell her father first. Later that day, E. L. went to lunch with her mother and father and, after her mother left, she told her father what had happened. Her father noticed that E. L. looked very pale and tired and was quieter than normal. As she told him what Chalker had done, she started crying and speaking very quickly. When they got home, E. L.'s father called the Cartersville Police Department.

During the evening of March 9, Joseph Wortham of the Cartersville Police Department spoke to E. L. and her father. Wortham testified that E. L. told him that at about 1:30 in the morning, she was watching television with her mother and Chalker. When her mother went to put E. L.'s sister to bed and fell asleep, Chalker began rubbing her and touched her breast and her genital area. He told her he would not leave her alone unless she touched his genitals. E. L. complied for about two minutes. Chalker then asked her to perform oral sex, but she declined. E. L. told Wortham that Chalker finally allowed her to go to sleep at approximately 7:30 that morning.

On July 28, 2003, E. L. went to Harbour House, a child advocacy center, for another interview. Ted Buckenham conducted a video-taped interview of E. L., and the tape was played for the jury. During the interview, E. L. again described how Chalker had touched her in the living room and in the bathroom of her mother's apartment. She mentioned several times that the lights were off in the bathroom while they were in there.

E. L.'s mother testified for the defense. She testified that E. L. has a reputation for lying and that she would not believe her under oath. She disputed some of E. L.'s testimony regarding the times that the touching occurred and also said that E. L. did not like the dark and that she would not go to the bathroom with the lights off. The defense also presented a videotaped interview of E. L. by a detective Frazier, who did not testify at trial. During the relatively brief interview, E. L. recounted the incident with Chalker on March 8 and 9.

A person commits the offense of child molestation by doing "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."[1] Counts 1 through 3

---

[1] OCGA § 16-6-4 (a).

of the indictment charged Chalker with child molestation by placing his hand on E. L.'s breast, placing his hand on E. L.'s genital area and having E. L. place her hand on his penis.

An act of child molestation becomes "aggravated" when it "physically injures the child or involves an act of sodomy."[2] "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."[3] Count 4 of the indictment charged Chalker with attempted aggravated child molestation by asking E. L. to place her mouth on his penis.

A person commits the offense of cruelty to children in the first degree when that person "maliciously causes a child under the age of 18 cruel or excessive physical or mental pain."[4] Count 5 of the indictment charged Chalker with maliciously causing E. L. "excessive mental pain by frightening her" when he stated that if she told about the incidents alleged in Counts 1 through 4, he would "kick her ass."

Chalker claims that the evidence was insufficient because (1) E. L.'s testimony was contradicted by her mother, who disagreed with some of the specific times that E. L. said the touching had occurred and said that E. L. would not have gone to the bathroom in the dark, as she told Buckenham; (2) E. L. did not tell Buckenham or Frazier that Chalker had asked her to put his penis in her mouth; and (3) E. L. had a motive to lie about Chalker because she did not like him. On cross-examination, E. L. testified that she had seen Chalker do things to her mother that she did not like and that she would like for her mother to leave him.

> On appeal from a criminal conviction, the evidence is construed in the light most favorable to the verdict of guilt, and the presumption of innocence no longer applies. As an appellate court, we do not weigh the evidence, judge the credibility of witnesses, or resolve conflicts in trial testimony when the sufficiency of evidence is challenged. Instead, we determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5]

It was the jury's role to determine whether E. L.'s testimony contained inconsistencies and to resolve conflicts between her testimony

---

[2] OCGA § 16-6-4 (c).
[3] OCGA § 16-4-1.
[4] OCGA § 16-5-70 (b).
[5] *Neal v. State*, 271 Ga. App. 283, 285 (1) (609 SE2d 204) (2005) (citation omitted).

and that of other witnesses.[6] Whether E. L. had a motive to lie was also an issue for the jury to resolve.[7] Because there was competent evidence, even if contradicted, to support each element of the state's case, the jury's verdict is upheld.[8]

*Judgment affirmed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED AUGUST 28, 2006.

*T. Joseph Campbell, District Attorney, Sharon M. Fox, Assistant District Attorney*, for appellee.

---

[6] See id.; see also *Malone v. State*, 277 Ga. App. 694, 696 (1) (627 SE2d 378) (2006); *Duncan v. State*, 262 Ga. App. 84, 85-86 (1) (584 SE2d 681) (2003).

[7] See *Akins v. State*, 241 Ga. App. 120, 121 (1) (526 SE2d 157) (1999); *Wand v. State*, 230 Ga. App. 460-461 (1) (496 SE2d 771) (1998).

[8] See *Malone*, supra; *Neal*, supra.