## S07A0790. JUNIOR v. THE STATE.
### (653 SE2d 481)

HINES, Justice.

Ray Parker Junior appeals his convictions for malice murder, armed robbery, and possession of a firearm during the commission of a felony, all in connection with the death of Jorge Duque. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Duque, Jose Trochez, and Marcos Almendariz were in the parking lot of an apartment complex next to Duque's pickup truck when they were approached by three men. Junior was one of the men and wielded a pistol. Junior and the other two men told Duque, Trochez, and Almendariz that they wanted money and not to move. Duque would not relinquish the keys to his truck; he was hit in the forehead with a pistol and struggled with his attacker, who shot him in the chest; Duque died of this wound. Junior and his companions fled, taking a cell phone and credit cards from Almendariz, and cash from each victim.

A search warrant was executed for Junior's home. During the search, a police officer saw Junior appear to throw something onto the roof of his house; money was recovered from the roof. The pistol used to shoot Duque was found behind Junior's home. Almendariz's credit cards were also found at Junior's home.

1. Junior challenges the sufficiency of the evidence, noting that Almendariz, the only victim who testified, did not identify him as one of the robbers, or as the shooter of Duque, and that before trial, Almendariz failed to identify anyone in a police lineup. However, there was ample evidence from which the jury could conclude that Junior shot Duque in the course of the robbery.[2] Thomas testified

---

[1] Duque was killed on August 23, 2002. On November 13, 2002, a Gwinnett County grand jury indicted Junior, Eddie Thomas, Donald Fort, Jr., and Elston Singleton, Jr., for malice murder, felony murder while in the commission of armed robbery, felony murder while in the commission of aggravated assault, armed robbery of Marcos Almendariz, armed robbery of Jose Trochez, aggravated assault of Jose Trochez, and possession of a firearm during the commission of a felony. Junior was tried alone before a jury November 10-17, 2003, and found guilty of all charges. On December 5, 2003, the trial court sentenced Junior to a term of life in prison for malice murder, terms of ten years in prison for each armed robbery charge to be concurrent with each other and consecutive to the life sentence, and a term of five years on probation for possession of a firearm during the commission of a felony, to be served consecutively to the armed robbery sentences; the court found that the aggravated assault charge merged with the armed robbery charges, and the felony murders stood vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372-374 (4), (5) (434 SE2d 479) (1993). Junior moved for a new trial on December 11, 2003, amended the motion on July 12, 2005, and again on August 4, 2005; the motion as amended was denied on January 31, 2006. Junior filed his notice of appeal on February 28, 2006; his appeal was docketed in this Court on February 13, 2007, and submitted for decision on April 9, 2007.

[2] The jury was instructed on the law of party to a crime.

that: he, Fort, Junior, and Singleton were in a Toyota 4Runner; they parked at an apartment complex intending to steal a stereo from a car; he, Fort, and Junior went down the hill to where Trochez, Almendariz, and Duque were by a pickup truck, leaving Singleton at the Toyota 4Runner; Junior had a pistol, but no one else did; Fort struck one of the victims with his hand; while Thomas was looking into the truck for a stereo system, he heard gunshots; after the shots, Junior was standing next to the victim of the shooting, still holding the pistol; Thomas, Fort, and Junior ran back to the 4Runner where Singleton was; and Thomas was driven to his home where he exited the 4Runner.

Fort testified that: he was at his girlfriend's home; Junior arrived to pick him up in a Toyota 4Runner; Thomas drove, Junior was in the front passenger seat, and Singleton was in the back seat; Junior stated that they would drive Fort home, but first they were going to "rob some Mexicans"; when the vehicle arrived at the apartments where the victims were, Fort remained with the vehicle despite being chided by the others for cowardice; one minute later, Fort exited the vehicle; he looked down a hill and saw Junior lead Thomas and Singleton to a truck; three pairs of hands went into the air; Junior appeared to argue with someone; Junior fell to the ground, then arose pointing a firearm; there were two gunshots; Fort decided to return to the 4Runner's interior and "play stupid"; Junior, Thomas, and Singleton rushed back to the 4Runner 30 seconds later, and Junior jumped into the driver's seat; Junior drove off and stated, "[y]eah, I had to cap the motherfucker because he tried me"; Thomas stated, "[d]amn, right when I'm going in the truck, next thing I know you done shot the motherfucker"; Junior, Thomas, and Singleton laughed about the matter; Singleton stated he had a cell phone; Thomas said he had some wallets, and they would count the proceeds later; the vehicle arrived at Fort's home and Fort began to exit it; and Junior told Fort that he "better forget everything" he had heard, and "[d]on't say nothing to nobody because I'd hate for something to happen to you or someone in your family, you know."

Singleton testified that: he was Junior's brother; he was not at the crime scene, but was at home when Duque was shot; Junior came home and gave him a cell phone; Singleton used the cell phone to call his mother in Louisiana; police came to ask him about the cell phone; and, at first, he told the police that he found the cell phone, then told them that he had gotten it from Junior. This cell phone proved to be the one taken from Almendariz.

The evidence was sufficient to enable a rational trier of fact to find Junior guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Prior to trial, the State moved that Junior be barred from cross-examining the testifying victims as to their immigration status.[3] The trial court granted the motion. Junior contends that this curtailed his right to a thorough and sifting cross-examination.

Although a defendant is entitled to a thorough and sifting cross-examination as to all relevant issues, the trial court, in determining the scope of relevant cross-examination, has a broad discretion. [Cit.] " 'Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent, the defense might wish.' [Cit.]" [Cit.]

*Kolokouris v. State*, 271 Ga. 597, 600 (4) (523 SE2d 311) (1999). "[T]he victim's character is rarely relevant for any purpose in a criminal proceeding." Id.

The immigration status of the victims was not an issue relevant to the matter being tried; i.e., whether Junior committed the crimes charged.[4] *Sandoval v. State*, 264 Ga. 199 (2) (a) (442 SE2d 746) (1994); *Lemons v. State*, 270 Ga. App. 743, 749-750 (4) (608 SE2d 15) (2004). The trial court did not abuse its discretion in limiting the scope of Junior's cross-examination of the testifying victims.

3. During the testimony of a police detective, a videotape of a police interview with Junior was played for the jury. During the interview, Junior stated that Singleton had been released from prison shortly before the events he related occurred. The State requested that Junior not be permitted to cross-examine the police detective about this declaration, or replay that portion of the tape,[5] contending that Junior's declaration was factually incorrect, and that in any event, it would not be proper impeachment of Singleton's testimony.[6] The trial court granted the State's request.

Junior concedes that the allegation in his statement would not serve to impeach Singleton, and asserts that he was not attempting

---

[3] The only information in the record regarding such status was that the State did not know what that status was, and had not inquired into it.

[4] Junior argues that he should have been able to explore the immigration status of a victim in the same manner he would be able to explore the possibility that the State has made a deal with a testifying co-defendant. See *Perez v. State*, 254 Ga. App. 872 (564 SE2d 208) (2002). But, see also *Hodo v. State*, 272 Ga. 272, 274-275 (4) (528 SE2d 250) (2000). Pretermitting whether the analogy is apt, and whether the State of Georgia is able to make any deal advantageous to one in this country illegally, the State's motion was that Junior not be permitted to ask the victims what their immigration status was; the motion did not encompass any and all questions concerning whether the victims received any benefit in exchange for their testimony.

[5] The State told the trial court that this portion of the tape was played in error.

[6] At this point in the trial, Singleton had already testified against Junior.

to do so. Rather, Junior contends that he should have been permitted to "clarify from the interviewing detective what was stated." The trial court has broad discretion in determining the relevancy of cross-examination. *Lawton v. State*, 281 Ga. 459, 461 (1) (640 SE2d 14) (2007). Whether Junior told the police that Singleton had recently been released from prison was not relevant to Junior's defense, and the trial court did not abuse its discretion in refusing to allow the question. *Sims v. State*, 280 Ga. 606, 608 (4) (631 SE2d 656) (2006). Further, even if it was error to limit the cross-examination, Junior must also show that he was harmed by the court's action. See *Madison v. State*, 281 Ga. 640, 642 (2) (b) (641 SE2d 789) (2007). As he fails to indicate what relevant and admissible information would have been elicited from the desired cross-examination, he fails to show what harm he suffered by being prevented from asking the detective whether Junior did, in fact, make the statement that was on the videotape.

4. Junior contends that his character was impermissibly placed in evidence by a testifying police officer, and that his motion for a mistrial should have been granted. The officer testified that he told Junior that he was being arrested for murder and armed robbery. The State then asked: "What did he say? Did he say anything to that?" The officer testified that Junior "wanted to make sure that I got him over to the jail in a hurry because he knew they were about to serve dinner and he didn't want to miss supper."

"Whether to grant a motion for mistrial is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial." *Ottis v. State*, 271 Ga. 200, 201 (3) (517 SE2d 525) (1999). As the trial court noted in denying the motion for new trial, supper times are predictable and the fact that Junior commented that the jail would soon serve its meal did not indicate prior incarceration. Further, even if Junior's remark did indicate that he had previously been in the jail, "[a] passing reference to a defendant's record does not put his character into issue. [Cit.]" *Roebuck v. State*, 277 Ga. 200, 205 (5) (586 SE2d 651) (2003). Here, the focus of the questioning was Junior's reaction to being charged with murder and armed robbery, and there was no error. Id.

5. The State presented an expert witness in forensic firearms, and asked him if he was aware of the results of a test that was performed by another expert "of anything that contradicted your findings?" The witness said, "No, sir," Junior objected, and the trial court sustained the objection. Junior now contends that a curative instruction was required. However, he did not request one, and any error in failing to give one is waived. *White v. State*, 281 Ga. 276,

280-281 (5) (637 SE2d 645) (2006); *Davis v. State*, 281 Ga. App. 855, 862 (6) (637 SE2d 431) (2006).
*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 21, 2007.

*Robert Greenwald*, for appellant.
*Daniel J. Porter, District Attorney, Jeanette F. Shaw, Assistant District Attorney, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Chad E. Jacobs, Assistant Attorneys General*, for appellee.