**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE and REESE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 20, 2017**

# In the Court of Appeals of Georgia

A17A1344. SCOTT v. THE STATE.                    DO-045 C

DOYLE, Judge.

After a jury trial, Demarri Scott was convicted of hijacking a motor vehicle[1] and two counts of aggravated assault.[2] Scott appeals the trial court's denial of his subsequent motion for new trial, arguing that insufficient evidence supports his convictions and that a fatal variance exists between the indictment and the proof at trial. For the reasons that follow, we affirm.

When reviewing the sufficiency of the evidence,

---

[1] OCGA § 16-5-44.1 (b).

[2] OCGA § 16-5-21 (b) (1).

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.[3]

So viewed, the evidence shows that on June 22, 2014, Yoni Hernandez borrowed his cousin's minivan to purchase a used iPhone from Monterio Young. Jose Cruz-Pantoja accompanied Hernandez to Young's home in Clayton County. When they arrived, Cruz-Pantajo noticed that the house had a "bad vibe," and he didn't feel safe going into the house, so he elected to wait in the driveway "just in case something happen[ed]." Hernandez approached the house, and as he climbed the front steps to the home, he was shoved into the front door of the house from behind. Young and another man, both armed with guns, then forced Hernandez to exit the house. Several other men with guns approached Cruz-Pantajo from behind, and the men

---

[3] (Citations omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

demanded the victims' personal items. The assailants took Cruz-Pantajo's wallet and phone and Hernandez's phone and keys. Another man then approached Hernandez from behind, hit him in the mouth with a gun, and then fled in a red car with a Hispanic man who ordered Hernandez into the house. Young and another man left in Hernandez's cousin's minivan.

Less than 20 minutes later, Petrine Bennett, a former sheriff's deputy, was at home approximately four miles from the robbery when she heard a loud noise and went outside to see that a minivan had crashed into a tree in her front yard. Bennett went outside to assist and spoke with the two men inside the minivan, one of whom seemed dazed; she identified one of the men as Scott. The driver declined Bennett's offer to call an ambulance, but she called 911 anyway; the men refused to wait and took off on foot. Bennett then followed them in her car, maintaining contact with police via phone.

In response to Bennett's call, a police officer located the two men and spoke with them from inside his patrol vehicle; the men identified themselves as Young and Scott. When the officer exited his vehicle, the men fled.

After learning that the minivan that crashed into Bennett's front yard had been reported stolen in connection with the armed robbery of Hernandez and Cruz-Pantajo,

3

police prepared a lineup with Scott's photograph. Cruz-Pantajo identified Scott as one of the persons who robbed him; Hernandez was not able to identify anyone in the photographic lineup.[4]

On July 24, 2014, Scott was arrested and questioned. After initially denying any involvement in the robbery, Scott later prepared a written statement indicating that he met Young and some other men on the day of the robbery, and Young "announced that he was about to rob some Hispanics." Scott stated that he declined to participate, but he rode with some other men to the abandoned house where Young was supposed to meet the victims. Scott saw Young brandish a gun and push the men inside the house, and he saw Young punch one of the victims in the mouth. Scott stated that he left the scene, met Young shortly thereafter, and got into the minivan Young was driving. After someone called and advised Young that there was a tracker on the minivan, he drove it into a fence, and Scott and Young fled.

---

[4] Cruz-Pantajo also identified Scott at trial as one of the men who robbed him.

The jury found Scott guilty of hijacking a motor vehicle (Count 1), aggravated assault of Hernandez (Count 3), and aggravated assault of Cruz-Pantajo (Count 7).[5] The trial court denied his subsequent motion for new trial, and this appeal followed.

1. Scott argues that his conviction for hijacking a motor vehicle must be reversed because there was a fatal variance between the allegations in the indictment and the proof at trial. Count 1 charged that Scott and Young "did, while in possession of a firearm, obtain a motor vehicle . . . from the presence of Yoni Hernandez by force and violence, to wit: he did hit him with a handgun." Scott contends that there was no evidence that Scott was the person that struck Hernandez. This enumeration presents no basis for reversal.

> Our courts no longer employ an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be

---

[5] Scott was acquitted of two counts of armed robbery (Counts 2 and 6), two counts of possession of a firearm during the commission of a crime (Counts 5 and 9), and two additional counts of aggravated assault (Counts 4 and 8).

taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense.[6]

Here, there is evidence from which the jury could conclude that it was Scott who struck Hernandez with a handgun. Hernandez testified at trial that a black male struck him from behind in the mouth.[7] Shortly thereafter, Young and another man fled in the minivan, while a Hispanic male and the man that struck Hernandez fled in a red car. Thus, there was no fatal variance between the evidence and the indictment.[8]

Moreover, given the evidence and the language of the indictment, "[Scott] was sufficiently informed of the charges against him so that he could prepare a defense[,

---

[6] (Punctuation omitted.) *Cooper v. State*, 286 Ga. 66, 68 (2) (685 SE2d 285) (2009), quoting *Delacruz v. State*, 280 Ga. 392, 396-397 (3) (627 SE2d 579) (2006).

[7] Cruz-Pantajo testified that the assailant struck Hernandez in the mouth with a gun.

[8] Compare *Ford-Calhoun v. State*, 327 Ga. App. 835, 836 (1) , 839-840 (1) (b) (761 SE2d 388) (2014) (conviction for aggravated assault reversed because the indictment alleged that the defendant assaulted the victim, with intent to rob, by pointing a gun at them, and there was no evidence that a gun was pointed at the victim").

and] there was no danger that [Scott] would be prosecuted again for the same offense. For these reasons, we conclude there was no fatal variance."[9]

2. Next, Scott challenges the sufficiency of the evidence, noting that Hernandez did not identify him at trial or in the photographic lineup. Notwithstanding Hernandez's failure to identify him, there was ample evidence to support Scott's convictions.[10]

First, Cruz-Pantajo positively identified Scott as one of the assailants. Additionally, Scott was found nearby shortly after the robbery in the stolen minivan; he gave his name to police and then fled, and although he denied participating in the robbery, Scott conceded that he was present when Young spoke about his plan to rob the victims as well as during the robbery itself. Finally, Scott also conceded that he left the scene with another individual in a car and soon thereafter got into the minivan with Young. Based on the foregoing, "[t]he evidence was sufficient to enable a

---

[9] (Footnote omitted.) *Battles v. State*, 262 Ga. 415, 417 (5) (420 SE2d 303) (1992), citing *Glass v. State*, 199 Ga. App. 530, 531-532 (1) (405 SE2d 522) (1991).

[10] See *Junior v. State*, 282 Ga. 689, 689-690 (1) (653 SE2d 481) (2007).

rational trier of fact to find [Scott] guilty beyond a reasonable doubt of the crimes of which he was convicted."[11]

*Judgment affirmed. Miller, P. J., and Reese, J., concur.*

---

[11] Id. at 690 (1). See also *Laurel v. State*, 278 Ga. App. 147, 147-148 (1) (628 SE2d 208) (2006) (evidence sufficient to support defendant's convictions for aggravated assault with intent to rob as a party to the crimes); OCGA §§ 16-5-44.1 (b); 16-5-21 (b) (1); OCGA § 16-2-20 (a) ("Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime.").