**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 18, 2019**

# In the Court of Appeals of Georgia

A19A0085. PATTERSON v. THE STATE.

COOMER, Judge.

Following a jury trial, Daniel Ray Patterson was found guilty of one count of aggravated child molestation and eight counts of child molestation.[1] Patterson appeals the denial of his motion for new trial, as amended, arguing that his due process rights were violated during the State's cross-examination of a defense witness. Patterson also alleges that he received ineffective assistance of counsel and that the evidence was insufficient to sustain his conviction on all counts of the indictment. For the reasons set forth in this opinion, we affirm.

---

[1] The case giving rise to this appeal was the result of a second trial. The previous trial ended in a mistrial due to the jury's inability to reach a unanimous verdict.

Viewed in the light most favorable to the jury's verdict,[2] the evidence shows that the victims, As.F. and Am.F., are the biological children of Patterson's wife, Tracy Patterson. Daniel and Tracy were married in 2005. In July 2007, Tracy had custody of the victims, and she along with Patterson, Patterson's four children,[3] and the victims moved to a home in Warner Robins. When the family moved, the victims, Am.F. and As.F. were eight and twelve years old, respectively. During that time, Tracy owned a hair salon a few miles away from the family home and was typically not home when the children arrived from school. Patterson retired sometime after the family moved to Warner Robins and would sometimes watch the victims after they returned home from school.

The incidents giving rise to this case occurred at the family home between 2007 and 2013. At trial, Am.F. testified that during the relevant period, Patterson would take Am.F. to the master bedroom and would touch her inappropriately. Specifically, Am.F. testified that Patterson placed his mouth and penis on her vagina, placed a vibrator into her vagina, touched her vagina and breasts with his hands, and made her

---

[2] *See Manuel v. State*, 289 Ga. 383, 384 (1) (711 SE2d 676) (2011).

[3] Patterson had custody of his two biological children who were of high school age at the time, and two adopted children who were both under the age of five.

2

watch him masturbate while he watched pornography. Am.F. said that the abuse would occur "every day or every other day" after she would get home from school and would last for approximately 30 minutes.

With respect to As.F., she testified that during the time she lived in the family home between 2007 and 2009, Patterson made As.F. watch him masturbate while he watched pornography. As.F. also testified that Patterson would walk into her bathroom and watch her while she was in the shower. The abuse would occur approximately once per week and ended after As.F. told her mother and Patterson that she wanted to live with her biological father. As.F. went to live with her father in the summer of 2009.

After moving in with her biological father, As.F.'s relationship with her mother deteriorated with the two barely communicating with one another. In April 2013, As.F. sent an email to her mother in which she described how Patterson would make her watch him masturbate as he looked at pornography and how Patterson would walk into the bathroom while she was in the shower. As.F. did not receive a response from her mother about the email but sent the same email to her stepmother the following day.

In March 2013, Am.F. told her mother that she wanted to move to her father's house just as As.F. had done when she was 14 years old. After moving in with her biological father and stepmother, Am.F's relationship with her mother Tracy was strained and they did not communicate. In July 2013, Am.F's stepmother saw cuts on Am.F.'s legs and asked her about them. Am.F. told her stepmother that she cut herself because she thought it would help her cope with the abuse she received from Patterson. The stepmother then contacted law enforcement to report the abuse allegations. Two weeks later, Am.F. was interviewed by a forensic interviewer and gave a recorded statement regarding the abuse.

At trial, Am.F.'s hour long videotaped forensic interview was played for the jury and the forensic interviewer testified that during the semi-structured interview, she gave Am.F. the opportunity to give a full narrative of her abuse. An officer who investigated the allegations testified that he executed a search warrant of Patterson's home and seized two laptop computers from the home and a cardboard box from the master bedroom closet which contained dildos, lubricant, and several massagers. A forensic analysis was conducted on the laptop computers taken from Patterson's home but no pornography was found on the hard drive or on the computer's search history. The forensic computer analyst who inspected Patterson's laptops testified that while

4

no pornography was found on either laptop computer, it was possible that at some point pornography was on the laptops but was later deleted or overwritten by other software programs.

In a nine count indictment, Patterson was charged with one count of aggravated child molestation and eight counts of child molestation.[4] Patterson was ultimately convicted by a jury on all counts and sentenced to life in prison on the aggravated child molestation charge and twenty years on the remaining counts. Patterson filed a motion for new trial, which he later amended, and the trial court denied following a hearing. This appeal followed.

1. As a threshold matter, Patterson argues that the evidence was insufficient to support his conviction. In support of this argument, Patterson contends that given the layout of the home and the make up of the members of the household at the time the alleged abuse occurred, the abuse could not have happened as Am.F. and As.F. testified. We disagree.

---

[4] The original indictment included a total of 14 counts, in which counts 11 through 14 were related to allegations that Patterson molested his adopted daughters. Patterson was tried on all counts during his first trial which ended in a mistrial. For the second trial, prosecutors dismissed counts 10 to 14 and tried Patterson only on the allegations in counts 1 through 9 related to incidents involving As.F. and Am.F.

OCGA § 16-6-4 (a) provides that "[a] person commits the offense of child molestation when such person [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy." OCGA § 16-6-4 (c). So long as there is competent evidence, even if contradicted, to support each element of the State's case, this Court will uphold the jury's verdict. *See Chalker v. State*, 281 Ga. App. 305, 308 (635 SE2d 890) (2006).

Despite Patterson's argument that Am.F. and As.F.'s allegations were not credible because other members of the household testified that they never witnessed any abuse or ever saw Am.F. or As.F. enter or exit the master bedroom, such inconsistencies and conflicts in the testimony do not equate to insufficient evidence. It is well settled in Georgia law that "it is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." *Heidt v. State*, 292 Ga. 343, 345 (1) (736 SE2d 384) (2013) (citation and punctuation omitted). In this case, it is apparent that the jury resolved any purported conflicts or

6

inconsistencies between As.F. and Am.F.'s testimony and the testimony of the other members of the household against Patterson. *See Terry v. State*, 293 Ga. App. 455, 457 (1) (667 SE2d 109) (2008). Because our obligation as the reviewing court is "to view the evidence in the light most favorable to the verdict and to leave questions of credibility and the resolution of conflicts in the evidence to the jury, we conclude that the evidence in this case was sufficient to authorize a rational trier of fact to find [Patterson] guilty beyond a reasonable doubt of the crimes for which he was convicted." *Heidt*, 292 Ga. at 345 (1) (citations omitted).

2. Patterson next argues that the trial court violated his due process rights by allowing the State to conduct an improper cross-examination of a defense witness. Specifically, Patterson contends that the trial court allowed the State to imply that defense counsel had hidden evidence from the State during its cross-examination of the defendant's wife. We disagree.

Under Georgia law, trial courts are authorized "to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence" and witnesses "may be cross-examined on any matter relevant to any issue in the proceeding." OCGA § 24-6-611 (a) - (b). Moreover, "[t]he right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against

the party." OCGA § 24-6-611 (b). "[W]e review the propriety of the trial court's admission of the evidence for an abuse of discretion." *Taylor v. State*, 302 Ga. 176, 180 (3) (805 SE2d 851) (2017) (citation omitted).

The record reflects that after the State rested its case, Tracy Patterson was called as a witness for the defense. During the State's cross-examination, Tracy was questioned about the strained relationship between her and the victims over the years. Without prompting by the State, Tracy testified that Am.F. called her a "couple of months" before the trial to tell Tracy that she was "sorry for lying" and that her stepmother had threatened her. The following exchange then occurred:

> THE STATE: You're, you're making this stuff up. You are making this stuff up.
>
> TRACY: I am not making this up.
>
> THE STATE: You are making this stuff up and you know it.
>
> TRACY: I am not making this up.
>
> DEFENSE COUNSEL: Your Honor, this is argumentative.
>
> THE STATE: So you're saying - -

TRIAL COURT: All right, ask the question.

THE STATE: Yes, sir. . . . You're saying now - -

TRACY: Yes.

THE STATE: Which I don't have anything from the Defense about this, that all of a sudden you're saying that [Am.F.] did call, you heard her testify, that she called you, right? Did you hear her?

TRACY: I didn't, I didn't hear her testifying.

THE STATE: Did you hear her testify she called you and you told her you were too busy to talk to her at that time?

TRACY: That was at the previous - -

THE STATE: Okay, jury will remember her testimony. But now you're saying that she called and apologized 'cause she lied.

TRACY: Yes.

THE STATE: Ms. Patterson, don't you think that's impossible, incredible, unbelievable?

TRACY: I was shocked to hear what she had to say.

9

THE STATE: And immediately, as soon as she said that you contacted [Defense Counsel] and said, she just called me and apologized.

DEFENSE COUNSEL: Your Honor, he opened the door to this question.

TRIAL COURT: And he's cross-examining her which he gets to do. Go ahead.

THE STATE: Right? As soon as you heard that you called her, didn't you?

TRACY: I didn't call her.

THE STATE: Of course you didn't 'cause you were going to wait 'til you got on the stand and lie, right?

TRACY: No.

THE STATE: And make it up?

TRACY: No.

THE STATE: No? You didn't tell anybody 'til today.

TRACY: No, I - -

THE STATE: Except, of course, Mr. Patterson. I'm sure you talked to him, haven't you?

TRACY: I did speak with him.

THE STATE: You told Mr. Patterson, right?

TRACY: I did speak with some people about it.

THE STATE: Okay, who did you talk to? I just want to remind you you're under oath.

TRACY: Yes.

THE STATE: Who did you talk to?

TRACY: I discussed it with [Defense Counsel].

THE STATE: You discussed it with [Defense Counsel]?

TRACY: Yes.

THE STATE: Do you want this jury to believe that you told [Defense Counsel] and that she never told the State this?

TRACY: Yes.

11

THE STATE: So y'all were preparing to do this at the last minute and spring this story that [Am.F.] lied?

DEFENSE COUNSEL: Your Honor, I object to insinuations about my complicity in this.

TRIAL COURT: Well, your client or your witness I guess has indicated she did that to you. I don't know if she did or not, but he's got her on cross and he's entitled to, to ferret that out to determine [sic] veracity and, and those kinds of things. He can do that. Go ahead.

THE STATE: Is that what you did.

TRACY: I did.

Patterson contends that the State's questioning of Tracy's account of the conversation she had with Am.F. violated his right to a fair trial because it implied that defense counsel owed a duty to inform the State about the conversation prior to trial. However, the State did not accuse defense counsel of withholding evidence but instead directly challenged Tracy's assertions that she told defense counsel about Am.F.'s alleged recantation. Georgia law favors the admission of any relevant evidence, and "[a]ny evidence is relevant which logically tends to prove or to disprove a material fact which is at issue in the case, and every act or circumstance

12

serving to elucidate or to throw light upon a material issue or issues is relevant." *Snelling v. State*, 215 Ga. App. 263, 265 (1) (b) (450 SE2d 299) (1994) (citations omitted). "The purpose of cross-examination is to provide a searching test of the intelligence, memory, accuracy, and veracity of the witnesses, and it is better for cross-examination to be too free than too much restricted." *Ledford v. State*, 89 Ga. App. 683, 685 (1) (80 SE2d 828) (1954) (citation omitted). "Wherever the purpose is to impeach or discredit the witness, great latitude should be allowed by the court in cross examinations." *Snelling*, 215 Ga. App. at 265 (1) (a) (citation omitted).

In the instant case, the trial court did not abuse its discretion by allowing the State to challenge the veracity of Tracy's statement that Am.F. recanted. "The trial court has broad discretion in determining the relevancy of cross-examination." *Junior v. State*, 282 Ga. 689, 692 (3) (653 SE2d 481) (2007) (citation omitted). Determining whether Tracy's assertion that Am.F. recanted her allegations against Patterson was true was a material issue in this case. Moreover, "[i]t is the duty of the trial court to control the trial of the case and to insure a fair trial to both sides. . . . The trial judge has broad discretion in handling these matters and we are loath to interfere with that discretion unless it is manifestly abused by clearly demonstrated prejudice or

13

unfairness." *Brumelow v. State*, 239 Ga. App. 119, 121 (3) (520 SE2d 776) (1999) (citation omitted).

The record shows that Patterson presented his wife Tracy as a witness on direct examination to rebut the allegations of molestation made by Am.F. and As.F. during their testimony. On cross-examination, Tracy challenged Am.F.'s testimony by stating that Am.F. called her a couple months prior to trial to recant. The State, having been unaware of this alleged call between Tracy and Am.F., was authorized to ferret out the truth through its questioning of Tracy. The record reflects that the State's questioning of Tracy sought to challenge her credibility as a reliable witness and to get to the bottom of whether the phone call actually took place. *See Hayes v. Hay*, 92 Ga. App. 88, 92 (2) (88 SE2d 306) (1955) ("[I]f the evidence given by a witness is inherently improbable, or if the witness is discredited in some legal manner, or if the witness is impeached, the jury may disbelieve [the witness] altogether; the jury may also take into consideration the interest of the witness in the result of the case[.]" (citations omitted)). Although defense counsel objected to the State's line of questioning, defense counsel did not ask for curative instructions or move for a mistrial on this issue, and the trial court overruled the objection because if anything it was the defense's witness and not the State who insinuated that defense

counsel was aware of Am.F.'s recantation. Regardless of the merits of Patterson's contention on this issue, we conclude that it is highly probable that the exchange between Tracy and the State did not contribute to the verdict. *See Moses v. State*, 270 Ga. 127, 129 (2) (508 SE2d 661) (1998); *see also Rambo v. State*, 266 Ga. App. 791, 794 (4) (598 SE2d 85) (2004) ("Remarks not likely to prejudice a defendant's right to a fair trial do not create reversible error." (citation omitted)). Consequently, we find no reversible error.

3. Lastly, Patterson alleges several instances where he claims to have received ineffective assistance of counsel.

> To prevail on a claim of ineffective assistance, [Patterson] must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. To show that the performance of his lawyer was deficient, [Patterson] must prove that [she] performed [her] duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. And to show that he was prejudiced by the performance of his lawyer, [Patterson] must prove a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This burden, though not impossible to carry, is a heavy one.

*Maurer v. State*, 320 Ga. App. 585, 590-591 (6) (740 SE2d 318) (2013) (citations omitted). "An insufficient showing on either prong relieves the reviewing court of the need to address the other prong." *Id*. at 591 (citation and punctuation omitted).

a. Patterson contends that trial counsel was ineffective for failing to object to the introduction of Am.F.'s forensic interview. Specifically, Patterson contends that because the controlling statute for child hearsay at the time of trial only allowed the admission of statements made by a child younger than 14 years old, and Am.F. was 14 at the time of her forensic interview, trial counsel's failure to object to the use of the forensic interview was deficient. We disagree.

Under the version of Georgia's Child Hearsay Statute applicable to Patterson's trial, "[a] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability." OCGA § 24-3-16 (2012). *See State v. Walker*, 342 Ga. App. 733, 734 (805 SE2d 262) (2017) ("[T]he admissibility of a child hearsay statement as to an act of child molestation occurring before July 1, 2013 is controlled by former OCGA § 24-3-16." (citation

16

omitted)). The current version of the statute allows admission for those statements made by a child under the age of 16. *See* OCGA § 24-8-820. "[T]he Child Hearsay Statute actually contemplates testimony from both the child and those witnessing the child's later reaction, even if the hearsay may be bolstering." *Jackson v. State*, 344 Ga. App. 618, 621 (2) (a) (810 SE2d 672) (2018) (citation omitted).

During Patterson's motion for new trial hearing, Patterson's trial counsel testified that she was aware that the law had changed in the interim between the motions hearings and when the trial began, but did not realize that the former version of the Child Hearsay Statute was controlling, and thus Am.F.'s interview was inadmissible. However, despite her misunderstanding of the applicable version of the statute, trial counsel testified that she had planned to play the forensic interview video at trial, regardless of whether the State chose to play it, as a part of her trial strategy. Trial counsel sought to use the forensic interview as a basis from which her expert would testify and attack several statements made by Am.F. "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." *McNair v. State*, 296 Ga. 181, 184 (2) (b) (766 SE2d 45) (2014) (citation omitted). Here, Patterson has not shown that trial counsel's

17

decision not to object to the admission of the forensic interview was patently unreasonable and a decision that no competent attorney would have made.

b. Patterson next argues that trial counsel's failure to move for a mistrial or ask for curative instructions following the State's cross-examination of Tracy Patterson was deficient performance. We disagree.

As discussed more fully in Division 2, we found no error in the State's cross-examination of Tracy Patterson, in which the State challenged Tracy's assertion that Am.F. called her prior to trial to recant her allegations of abuse against Patterson. Patterson now argues that, while trial counsel vehemently objected to the State's questioning of the defense's witness, trial counsel should have moved for a mistrial, or at a minimum asked for a curative instruction to "dispel the false impression that the defense had hidden evidence." "To prevail on his ineffective assistance claim, [Patterson] must show that there is a reasonable probability that the trial court would have granted a motion for mistrial, if such a motion had been timely made by trial counsel." *Kirkland v. State*, 334 Ga. App. 26, 35 (5) (b) (778 SE2d 42) (2015) (citations omitted). "A trial court has broad discretion in deciding whether to grant a mistrial, and the grant of a mistrial is required only if it is apparent that a mistrial is essential to the preservation of the right to a fair trial." *Id.* (citations and

18

punctuation omitted). As discussed more fully in Division 2, the State's cross-examination of Tracy Patterson was permissible, and therefore had trial counsel moved for a mistrial, the trial court would not have abused its discretion by denying the motion on the basis that the assertions proffered by the defense's witness during the State's questioning undermined the witness's credibility.

At the hearing on the motion for new trial, trial counsel testified that she should have moved for a mistrial or curative instructions following the exchange between Tracy and the State but did not think of it at the time. However, the omission appears to have been a matter of trial strategy since trial counsel later testified that she did not attempt to rehabilitate Tracy on redirect because she did not want to bring too much attention to the exchange and wanted to distance herself from the exchange altogether. This Court has held that "[a] strategic decision not to draw the jury's attention to unfavorable testimony through the giving of a curative instruction is within the wide latitude of presumptively reasonable professional conduct engaged in by a trial attorney." *Davis v. State*, 326 Ga. App. 778, 782 (2) (b) (757 SE2d 443) (2014) (citation omitted). The "standard for deficient performance is an objective one, hindsight has no place in an assessment of the performance of trial counsel, and a lawyer second-guessing [her] own performance with the benefit of hindsight has no

significance for an ineffective assistance of counsel claim." *Keener v. State*, 301 Ga. 848, 850 (2) (804 SE2d 383) (2017) (citations and punctuation omitted).

c. Patterson contends that his trial counsel was ineffective for failing to call a computer forensic expert at trial. This argument fails.

At trial, both victims testified that Patterson made them watch pornography with him while he masturbated. After law enforcement executed a search warrant of the family home and seized two laptop computers, a forensic analysis was conducted on both computers. The jury heard testimony from the forensic analyst who performed the analysis on the computers that while he did not discover any pornography downloaded to the laptop or in any of the search history of the computers, it was possible that at some point there had been pornography on the computer. Patterson's trial counsel extensively questioned the computer forensic analyst on cross-examination about his lack of finding any evidence that pornography had ever been accessed on the computer.

During the hearing on Patterson's motion for new trial, trial counsel testified that she did not have a strategic reason for not seeking a computer forensic expert and that she felt her cross of the State's expert was a "complete disaster." At the hearing, Patterson's appellate counsel presented evidence from a computer expert who

testified that the State's expert's testimony was "highly inaccurate" and that had he been hired to testify at trial he could have provided more certainty as to whether there had ever been pornography on the devices. Although trial counsel appeared to fall on her sword regarding her non-strategic decision not to hire an forensic computer expert, "[i]t is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics; tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances." *Haynes v. State*, 326 Ga. App. 336, 343 (3) (a) (756 SE2d 599) (2014) (citation omitted). "Trial strategies do not equate to ineffective assistance merely because appellate counsel would have pursued a different strategy." *Id*. at 343-344 (3) (a) (citation omitted).

Pretermitting whether trial counsel's failure to call a computer forensic expert as a witness was deficient performance, Patterson cannot establish that he was prejudiced by the alleged deficiency. Even if trial counsel had presented an expert to point out the deficiencies in the State's expert's testimony and analysis, the jury still heard testimony that no pornography was found on either computer seized from the home. Although the State's expert testified that at some point in time there could have been pornography on the computers, Patterson cannot show that but for trial counsel's

21

failure to call an expert, there was a reasonable probability that the outcome of the trial would have been different.

d. Patterson contends that trial counsel's failure to present evidence at sentencing or to request a continuance to allow her to present witnesses and evidence on Patterson's behalf at the sentencing hearing was deficient. In support of his argument, Patterson points to trial counsel testimony during the motion for new trial hearing where she stated that she was not ready for sentencing after the verdict was passed down and had no strategic reason for not gathering mitigating evidence for sentencing. We disagree.

As an initial matter, there is no requirement that trial counsel present mitigating evidence at sentencing. *See State v. Worsley*, 293 Ga. 315, 326 (4) (745 SE2d 617) (2013). Here, Patterson was found guilty of one count of aggravated child molestation and eight counts of child molestation. The record shows that trial counsel argued to have Patterson's sentences reduced from the mandatory sentences, and as part of her argument, raised several mitigating factors the trial court should consider. Despite her effort, the trial court sentenced Patterson to the maximum sentence for the aggravated child molestation charge. *See* OCGA § 16-6-4 (d) (1). On appeal, Patterson merely speculates that had trial counsel presented other mitigating evidence, the trial court

may have lessened the sentence. However, in its order denying Patterson's motion for new trial, the trial court found that trial counsel's performance at sentencing was "in no way deficient" and that Patterson's proffer at the hearing of other factors and information that could have been presented was "not persuasive of anything" and was without support as to how those factors could have affected the sentence. Thus, Patterson cannot establish that the presentation of mitigating evidence to the trial court would have resulted in a different sentence. *See Eskew v. State*, 309 Ga. App. 44, 51 (5) (d) (709 SE2d 893) (2011); *see also Tyner v. State*, 313 Ga. App. 557, 566 (6) (e) (722 SE2d 177) (2012) ("[A]bsent any such showing in the record, we cannot find that counsel's failure to present mitigation evidence was deficient or that it prejudiced [Patterson's] case." (footnote omitted)).

e. Patterson next argues that his trial counsel rendered ineffective assistance by failing to challenge the constitutionality of his life sentence on the charge of aggravated child molestation. Patterson contends the life sentence he received is tantamount to cruel and unusual punishment within the meaning of the United States and Georgia Constitutions, and his trial counsel's failure to raise the issue was deficient performance. This argument is unavailing.

23

OCGA § 16-6-4 (d) (1) provides in pertinent part that, "a person convicted of the offense of aggravated child molestation shall be punished by imprisonment for life or by a split sentence that is a term of imprisonment for not less than 25 years and not exceeding life imprisonment, followed by probation for life[.]" Patterson contends that the trial court's imposition of a life sentence for his commission of performing oral sex on Am.F. is grossly disproportionate.

"Punishment for a crime will be deemed to be unconstitutionally excessive if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *Widner v. State*, 280 Ga. 675, 676 (1) (631 SE2d 675) (2006) (citation and punctuation omitted). Our Supreme Court has emphasized that "it is the rare case in which the threshold inference of gross disproportionality will be met and a rarer case still in which that threshold inference stands after further scrutiny." *Adams v. State*, 288 Ga. 695, 701 (4) (707 SE2d 359) (2011) (citations and punctuation omitted). Moreover, "[a] sentence which is not otherwise cruel and unusual does not become so simply because it is mandatory. Legislative enactments constitute the clearest and most objective evidence of how contemporary society views a particular punishment. As a result, the

24

issue of punishment is generally one for the legislative branch, and legislative discretion is deferred to unless the sentence imposed shocks the conscience." *Widner*, 280 Ga. at 676 (1) (citations and punctuation omitted).

In the present case, the trial court sentenced Patterson to life for his commission of aggravated child molestation, which is not a passive felony. *See Pepe-Frazier v. State*, 331 Ga. App. 263, 273 (3) (c) (770 SE2d 654) (2015). The evidence showed that during at least one of the numerous instances of child molestation, Patterson performed oral sex on the victim. Accordingly, Patterson has failed to show either deficient performance by trial counsel or a reasonable probability that his sentence would have been different if the constitutional challenges had been timely raised. His ineffective assistance claim is therefore without merit. *See Jones v. State*, 290 Ga. 670, 676 (725 SE2d 236) (2012).

f. Lastly, Patterson contends that the combined errors of trial counsel throughout the prosecution of this case prejudiced his defense to the extent that the outcome of the trial would have been different but for trial counsel's deficient errors. We disagree.

At the hearing on the motion for new trial, trial counsel testified to several instances where she was not adequately prepared to handle certain issues at trial, and

thus failed to, among other things, hire an expert, present mitigating witnesses at sentencing, or challenge the admission of certain evidence. However, as noted by the trial court, the arguments and evidence that Patterson presented during the hearing on the motion for new trial in support of his assertions were more indicative of how his new counsel would have conducted the case differently than of how Patterson was prejudiced by trial counsel's alleged deficient performance. Even if this Court were to accept Patterson's assertions that trial counsel's actions constituted deficient performance, Patterson failed to show that there was a reasonable likelihood that but for his trial counsel's combined errors the outcome of the trial would have differed. *See Phillips v. State*, 285 Ga. 213, 223 (5) (k) (675 SE2d 1) (2009). Accordingly, we find no error.

*Judgment affirmed. Doyle, P. J., and Markle, J., concur*.